```
UNITED STATES BANKRUPTCY COURT                 FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:                                         :
                                               :       Chapter 11
GMG CAPITAL PARTNERS III, L.P.,                :       Case No. 13-12937 (SMB)
et al.,                                        :       Jointly Administered
                                               :
                                               :
            Debtors.                           :
-------------------------------------------------------X
```

**MEMORANDUM DECISION DENYING
MOTION TO EXTEND EXCLUSIVITY**

**A P P E A R A N C E S:**

OLSHAN FROME WOLOSKY LLP
Park Avenue Tower
65 East 55th Street
New York, NY 10022

      Michael S. Fox, Esq.
      Jonathan T. Koevary, Esq.
           Of Counsel

*Counsel to the Debtors*


HALPERIN BATTAGLIA RAICHT, LLP
40 Wall Street - 37th Floor
New York, NY 10005

      Alan D. Halperin, Esq.
      Carrie Essenfeld, Esq.
           Of Counsel

       – and –

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

      Derek C. Abbott, Esq.
      Daniel B. Butz, Esq.
           Of Counsel

*Counsel to Athenian Venture Partners I, L.P. and
Athenian Venture Partners II, L.P.*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

GMG Capital Partners III, L.P. and GMG Capital Partners III Companion Fund, L.P. (the "Original Debtors") have filed their first motion to extend the exclusive period to file a plan and solicit acceptances.[1] (*Debtors' Motion for an Order Extending the Exclusive Periods to File a Chapter 11 Plan and to Solicit Acceptances Thereto Pursuant to Section 1121(d) of the Bankruptcy Code*, dated Jan. 8, 2014 ("*Motion*") (ECF Doc. # 44).)[2] GMG's principal creditors, Athenian Venture Partners I, L.P. and Athenian Venture Partners II, L.P. (collectively, "Athenian") object. (*Objection of Athenian Venture Partners I, L.P. and Athenian Venture Partners II, L.P. to the Debtors' Motion for an Order Extending the Exclusive Periods to File a Chapter 11 Plan and to Solicit Acceptances Thereto Pursuant to Section 1121(d) of the Bankruptcy Code*, dated Jan. 15, 2014 ("*Objection*") (ECF Doc. # 51).) This is an atypical case in which GMG does not operate, and its sole business is managing a portfolio (through an affiliated management company) consisting of the stock in three technology companies, including Open Peak, Inc. GMG expects that Open Peak will increase significantly in value in the near future, but Athenian is less optimistic or at least unsure.

The question posed by GMG's exclusivity motion is whether GMG should be permitted to impose its view of the future on Athenian and any other party in interest by preventing them from filing a plan that calls for a different exit strategy that may involve a quicker sale of the portfolio. For the reasons discussed below, the Court concludes that GMG has failed to sustain its burden of demonstrating cause to extend exclusivity, and accordingly, the *Motion* is denied.

---

[1] The Original Debtors, together with GMG Capital Investments, LLC and GMS Capital Partners II, L.P. (the "Subsequent Debtors"), are referred to collectively as "GMG."

[2] Unless otherwise stated, "ECF Doc. #" refers to the docket in the lead case, GMG Capital Partners III, L.P., Case No. 13-12937.

## BACKGROUND

Except as noted, the facts are not in dispute. GMG is comprised of four affiliated venture capital investment funds, to wit, the Original Debtors and the Subsequent Debtors. (*Declaration Of Jeffrey Gilfix Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York*, dated Sept. 10, 2013 ("*Gilfix Declaration*"), at ¶ 2 (ECF Doc. # 3).) Their principal assets consist of investments in three portfolio companies: (a) Open Peak (b) Lancope, Inc., and (c) X-Factor Communications, LLC. (*Id.* at ¶ 6.) Open Peak, in which GMG holds an approximate 5% equity position, appears to be the most valuable. GMG estimates that this interest will be worth not less than $25 million in the near future.[3] (*See Motion* at ¶ 1.) In addition, the Original Debtors listed the aggregate value of their investments in Lancope and X-Factor Communications at approximately $3 million. (*See* Schedule B, line 13 (ECF Doc. # 21); Schedule B, line 13 (Case No. 13-12939 (ECF Doc. # 13).) Aside from office furniture, their only other assets consist of a claim for management fees in the aggregate approximate sum of $1.2 million. (*See* Schedule B, line 16 (ECF Doc. # 21); Schedule B, line 16 (Case No. 13-12939 (ECF Doc. # 13)).) This receivable has been outstanding for more than 90 days. (*See* ECF Doc. ##47 (6 of 11), 49 (6 of 11).) Finally, GMG earns no income and pays few expenses. (*See* ECF Doc. # 47 at 4 of 11.)

Athenian is also a venture capital investment fund. At one time, GMG and Athenian were co-investors in a technology stock, but in 2005, Athenian sold its interest to GMG. (*Motion of Athenian Venture Partners I, L.P. and Athenian Venture Partners II, L.P. for an Order*

---

[3] According to their respective schedules, the Original Debtors valued their aggregate investment in Open Peak in excess of $20 million as of the Petition Date. (*See* Schedule B, line 13 (ECF Doc. # 21); Schedule B, line 13 (Case No. 13-12939 (ECF Doc. # 13).) The Subsequent Debtors have not filed schedules although their deadline to do so has long passed. However, the November 2013 Monthly Operating Report filed by GMS Capital Partners II, L.P., a Subsequent Debtor, appears to claim ownership of the same assets listed by GMG Capital Partners III, L.P., an Original Debtor. (*See* ECF Doc. # 50 at 6-7 of 11.)

*Pursuant to Fed. R. Bankr. P. 2004 Authorizing the Examination of the Debtors and Certain Debtor- Related Parties and Granting Related Relief*, dated Oct. 18, 2013 ("*2004 Motion*"), at ¶¶ 7, 10.  (ECF Doc. # 14).)  In exchange, GMG executed and delivered a Limited Recourse Promissory Note, dated Aug. 18, 2005 (the "Note") in favor of Athenian in the aggregate sum of $6 million.[4]  Subject to certain conditions, the Note required GMG to make monthly payments of principal in the amount of $15,000, defined in the Note as the "Mandatory Payments."

GMG failed to pay the Note in accordance with its terms, and Athenian sued GMG in Delaware state court.   On June 21, 2013, Athenian recovered a judgment (the "Judgment").[5] The Judgment ordered GMG to pay Athenian $15,000 by the last day of each month until the $6,000,000 Note was paid in full, and also awarded liquidated damages for past due Mandatory Payments in the amount of $960,000, pre-judgment interest in the amount of $157,646 and attorneys' fees, costs and expenses in the amount of $1,201,157.03.  According to GMG's Schedules, Athenian holds a claim in the sum of $6,950,000 (listed as unliquidated), which is slightly more than 88% of GMG's total unsecured debt.  (*See* Schedule F (ECF Doc. # 21).)

Faced with Athenian's efforts to collect the Judgment by forcing the sale of the portfolio, the Original Debtors filed their chapter 11 cases on September 10, 2013.  The Subsequent Debtors followed suit on November 14, 2013, and the four cases are being jointly administered. Aside from discovery skirmishes involving GMG and Athenian, little has occurred in these cases.  The Original Debtors filed their schedules and statement of financial affairs late, and the

---

[4]    A copy of the Note is annexed as Exhibit B to the *2004 Motion*.

[5]    A copy of the Judgment is annexed as Exhibit C to the *2004 Motion*.

4

Subsequent Debtors not at all.  In addition, GMG has not filed an application to fix a deadline for filing claims.

Exclusivity expired on January 8, 2014, and the Original Debtors made a timely motion to extend exclusivity on that day.  The thrust of GMG's argument is that the value of its holdings, primarily in Open Peak, will increase dramatically in the near future, and accordingly, it is in the interest of the creditors and equity to hold onto those investments rather than liquidate them now.  Open Peak has developed "corporate mobility software" which permits a corporate employee to use his workspace virtually on his personal smart phone at security and efficiency levels not otherwise found in the marketplace.  (*Motion* at ¶ 16.)  The software is currently in trial phases with AT&T Wireless and Research in Motion end users at a number of the largest Fortune 500 companies, and Open Peak expects to sign with major international carriers.  (*Id.* at ¶ 20.)  In addition, AT&T Wireless has recently invested $15 million in Open Peak.  (*Id.* at ¶ 16.)[6]

GMG's investments are currently illiquid but GMG expects 2014 to be "the pivotal year in which a sale, merger or initial public offering transaction (each, a "Transaction") will finally allow them to realize these investments."  (*Id.* at ¶ 15.)  Conservatively speaking, Open Peak may have a transaction value of $500 million, (*id.* at ¶ 22), but any effort to liquidate the investment prematurely before a Transaction would severely depress its value.  (*Id.* at ¶ 23).  GMG also argues that the relevant factors, discussed below, weigh in favor of granting the extension.  (*Id.* at ¶¶ 24-30.)

---

[6] GMG also believes in the increased future value of Lancope.  Lancope provides "cutting age security software," and its customers include AT&T and Cisco. (*Motion* at ¶ 21.)

5

Athenian argues, in the main, that GMG is a non-operating company that has parked itself in bankruptcy as a stalling tactic. It hopes that its 10-year old speculative technology investments will pay off and realize value to its limited partners who are currently "out of the money." There are no unresolved contingencies, and GMG can file a plan today based on its asserted valuations of Open Peak and Lancope. (*Objection* at ¶ 7.) Furthermore, the factors discussed below militate against granting the extension. (*Id.* at ¶¶ 11-16.)

## DISCUSSION

Bankruptcy Code §1121 grants the debtor the exclusive right to file a plan within 120 days after the date of the order for relief, usually the Petition Date. If the debtor files the plan within the exclusivity period, it has the exclusive right to solicit acceptances up to 180 days after the order for relief. Pursuant to Bankruptcy Code §1121(d)(1), "the court may for cause reduce or increase the 120-day period or the 180-day period."[7] Once exclusivity terminates, any party in interest, including the debtor, can file a plan. If multiple plans are filed, and more than one satisfies the requirements for confirmation, the Court can confirm only one plan based upon its consideration of the preferences of the creditors and equity security holders. 11 U.S.C. § 1129(c).

Bankruptcy Code §1121 represents a compromise between the perpetual exclusivity granted to the debtor under chapter XI of the former Bankruptcy Act and the right of every party in interest to file a plan that existed under former chapter X. H.R. REP. NO. 95-595, at 231 (1977). It attempts to balance the debtor's need to remain in control to some degree and thereby

---

[7] The Court cannot extend the 120-day exclusive beyond 18 months after the order for relief, or the 180-day period beyond 20 months after the order for relief. 11 U.S.C. § 1121(d)(2).

6

encourage debtors to seek chapter 11 before it is too late against the creditors' legitimate interest in having a say in the future of the business. *Id.* at 231-32.

The 120-period should be sufficient to allow the debtor to negotiate a settlement without unduly delaying the creditors. *Id.* at 232. The Bankruptcy Code recognizes, however, that the initial 120-day period may not be sufficient, and grants a court the power to extend exclusivity for "cause" shown. The Bankruptcy Code does not define "cause," but the legislative history indicates that the relevant factors include the size of the case, evidence of delay by the debtor, recalcitrance among creditors, a showing of some probability of success, and whether the debtor is using exclusivity as a tactical device to pressure the parties in interest to yield to a plan they consider unsatisfactory. *Id.* at 406; S. REP. NO. 95-989, at 118 (1978). Decisional law has amplified the relevant considerations and distilled them into a nine factor test:

> (1) the size and complexity of the case; (2) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information; (3) the existence of good faith progress toward reorganization; (4) the fact that the debtor is paying its bills as they become due; (5) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (6) whether the debtor has made progress in negotiations with its creditors; (7) the amount of time which has elapsed in the case; (8) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and (9) whether an unresolved contingency exists.

*In re Borders Group, Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011); *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); *In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997); *see generally* 7 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 1121.06[2], at 1121-11 (16th ed. 2013). The party seeking an extension of exclusivity has the burden of proving "cause." *Borders*, 460 B.R. at 821; *In re R.G. Pharmacy, Inc.*, 374 B.R. 484, 487 (Bankr. D. Conn. 2007); *In re Newark Airport/Hotel L.P.*, 156 B.R. 444, 451 (Bankr. D.N.J.), *aff'd*, 155 B.R. 93 (D.N.J. 1993).

The relevant factors weigh against granting the extension. First, the cases are small and uncomplicated (Factor 1). GMG does not operate, and aside from the portfolio, GMG has no other assets that it must decide to keep or sell, no unexpired leases or executory contracts that it must decide to assume or reject,[8] no employees it must decide to retain or discharge and no business to restructure. In addition, there are no secured or priority creditors, and only a handful of unsecured creditors. GMG has had sufficient time to ascertain its financial condition, chart the future course of its business and formulate a plan (Factor 2).

Second, although this is the first motion to extend exclusivity (Factor 7), courts have not hesitated to deny a first motion to extend exclusivity where the circumstances warrant it. *E.g.*, *In re Gen. Bearing Corp.*, 136 B.R. 361 (Bankr. S.D.N.Y. 1992); *In re All Seasons Indus., Inc.*, 121 B.R. 1002 (Bankr. N.D. Ind. 1990); *In re Am. Fed'n of Television & Radio Artists*, 30 B.R. 772 (Bankr. S.D.N.Y. 1983); *cf. Borders*, 460 B.R. at 821 (granting extension but stating that "[a]lthough this is the Debtors' first request to extend their Exclusive Periods, that fact, by itself, does not constitute cause for an extension"). For the reasons stated in this opinion, the other factors weigh against an extension.

Third, GMG has had sufficient time to enter into good faith negotiations with its creditors, principally Athenian, but has not even commenced plan negotiations (Factors 3, 6). The only negotiations with Athenian have been limited to Rule 2004 discovery disputes. (*Motion* at ¶¶ 24, 26.) Moreover, the only thing to negotiate is the timing and method of disposing of the Open Peak and Lancope stock, and the parties are at an impasse. GMG wants to hold on to its stock expecting a rise in its value, Athenian wants GMG to promptly sell sufficient

---

[8] Although the Original Debtors contend that they are owed management fees, neither listed an executory management agreement (or any other unexpired leases or executory contracts) in Schedule G.

8

assets to meet its obligations without further delay.  (*Objection* at ¶ 3.)  Both sides are sophisticated investment funds, and GMG has not been able thus far to convince Athenian that it makes sense to wait.

Fourth, despite its minimal operations, GMG is not paying its bills as they become due, and is hurtling deeper into insolvency (Factor 4).  It continues to accrue professional fees which, as of November 30, 2013, totaled $29,631.  (ECF Doc. # 47 at 5 of 11.)  These fees will have to be paid no later than the effective date of a confirmed plan, unless the professionals agree to different treatment.  *See* 11 U.S.C. § 1129(a)(9)(A).

Fifth, GMG has not demonstrated reasonable prospects for proposing a viable plan that Athenian will support (Factor 5).  Athenian controls nearly 90% of the unsecured debt in this case, and the unsecured class appears to be the only impaired class that would be entitled to vote.  If Athenian were to vote its claim to reject the plan, the unsecured class would reject the plan and GMG could not satisfy 11 U.S.C. § 1129(a)(10).[9]  Alternatively, GMG could pay the unsecured creditor class 100% plus post-petition interest on the effective date, leaving the class unimpaired, *see* 11 U.S.C. § 1124(1), and deemed to accept the plan.  11 U.S.C. § 1126(f).  GMG has not, however, demonstrated the wherewithal to do this.

GMG hints that it may separately classify Athenian.  (*Motion* at ¶ 3 ("Creating a separate classification for Athenian is currently under consideration.").)  Although the classification standards are flexible, GMG cannot separately classify Athenian's unsecured claim for the sole purpose of obtaining an impaired accepting class that includes all of the other unsecured claims.

---

[9] Section 1129(a) sets forth the requirements for confirmation.  Section 1129(a)(10) states that "if a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider."

9

*Boston Post Road Ltd. P'ship v. FDIC (In re Boston Post Road Ltd. P'ship)*, 21 F.3d 477, 483 (2d Cir. 1994) ("[A]pproving a plan that aims to disenfranchise the overwhelmingly largest creditor through artificial classification is simply inconsistent with the principles underlying the Bankruptcy Code."), *cert. denied*, 513 U.S. 1109 (1995); *Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1279 (5th Cir. 1991) ("[T]he one clear rule that emerges from otherwise muddled caselaw on § 1122 claims classification: thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan."), *cert. denied*, 506 U.S. 821 (1992). But even if it could separately classify Athenian and Athenian rejected the plan, GMG would then have to cram the plan down Athenian's throat, and the absolute priority rule would prevent GMG's current members and partners from retaining their interests unless Athenian's class/claim was paid in full. *See* 11 U.S.C. § 1129 (b)(2)(B)(ii).

Sixth, GMG is using the exclusivity motion as a tactical weapon in its ongoing war with Athenian (Factor 8). This case is essentially a two party dispute between GMG and Athenian, and the exclusivity motion reflects GMG's effort to retain control over the disposition of its portfolio. It is designed to induce Athenian to accept GMG's view of the future, or at a minimum, prevent Athenian from filing a plan that would jeopardize the potential upside to GMG's other stakeholders, including its members and limited partners who are currently "out of the money" and have everything to gain and nothing to lose by waiting in hope that the portfolio will increase in value.[10]

---

[10] GMG charges that Athenian wants to seize the portfolio for its personal benefit. (*Motion* at ¶ 3.) If and when it occurs, the sale of the GMG portfolio will be for the benefit of all stakeholders, and the proceeds will be distributed equitably in accordance with the dictates of the Bankruptcy Code.

Seventh, there are no unresolved contingencies that must occur before GMG can propose a plan (Factor 9). Generally, an unresolved contingency refers to some event external to the case that must occur or not occur in order for the case to succeed. *See Dow Corning*, 208 B.R at 666. For example, an unresolved contingency may include the favorable resolution of litigation involving the debtor's right to use an asset (*e.g.*, a lease or a trademark) that is essential to the debtor's business. It may also include events such as a zoning change that must occur in order for the debtor to rehabilitate or erect the building that underpins its plan.

Here, however, the unresolved contingency is internal to the bankruptcy process, and concerns financial feasibility; GMG does not have enough money to confirm a plan that satisfies the unsecured debt and distributes something to its own equity, but it will if Open Peak increases in value. First, this "contingency" does not prevent GMG from filing a confirmable plan now; instead, the current value of its assets prevents it from filing a plan that pays the distributions it would like to pay. Second, this "contingency" is no different than the "contingency" in many cases where the debtor's cash flow must improve in order for it to be able to fund a plan. If the financial ability to confirm a plan is the type of unresolved contingency that justifies the extension of exclusivity, debtors will be able to park themselves in chapter 11 and hold their creditors hostage unless or until things improve. In effect, this will give a debtor perpetual control over the plan process until it has enough money to confirm a plan, a result at odds with the compromise embodied in Bankruptcy Code § 1121.

At bottom, this is a two party dispute, and each side appears to have a different view of the future. Presumably, the market knows what GMG knows, and will assess Open Peak's prospects and value the stock accordingly. Furthermore, Athenian owes fiduciary duties to its own partners, and is not likely to insist on a precipitous sale if it believes that the value of

11

GMG's portfolio will increase in the near future and provide a greater distribution to creditors. Each side should be able to file their own plan and let the other creditors, the market, and if necessary, the Court, determine the value of the Open Peak stock in the context of a sale or a confirmation hearing.  Accordingly, the motion to extend exclusivity is denied.  Submit order.

Dated: New York, New York
       January 24, 2014

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge